# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| MARY P. O'CONNOR-SAVERSE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil No. 10-48-P-H |
| | ) | |
| YORK COUNTY, et al., | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM DECISION ON MOTION TO AMEND

The plaintiff moves retroactively to extend the May 18, 2010, deadline to amend pleadings and join parties, in order to amend her complaint to add a defendant and revise the factual predicate for her claims as a result of newly-acquired information. *See* Plaintiff's Motion To Extend Deadline To Amend Pleadings and for Joinder of Parties and Motion for Leave To Amend Complaint ("Motion") (Docket No. 21) ¶¶ 7-18; *see also* Docket No. 14. The defendants oppose the proposed amendment on the grounds of both lateness and futility. *See* York County Defendants' Objection to Plaintiff's Motion To Extend Time and To Amend Complaint ("York County Response") (Docket No. 22) at 1; Response of Defendants McGarry & Holmes and Amy McGarry in Opposition to Plaintiff's Motion To Extend Time To Amend Complaint ("McGarry Response") (Docket No. 24) at 1.[1] I stayed the parties' August 31, 2010, dispositive motions

---

[1] The plaintiff sued two sets of defendants, the so-called "York County Defendants" and the "McGarry Defendants." *See* Complaint (Docket No. 3-2), attached to Affidavit of John J. Wall, III (Docket No. 3), ¶¶ 11-13. The York County Defendants originally consisted of the County of York, Maine; Maurice Ouellette, the sheriff of York County; Michael Vitiello, the superintendent of the York County Jail; four identified employees of the York County Sheriff's Office and York County – Sergeant Scammon, Sean P. Valliere, Officer Cross, and Sergeant Brooks – and John Doe and other York County Sheriff's Office employees then unknown to the plaintiff. *See id.* ¶¶ 2-11. The court since has granted an unopposed motion by the plaintiff to dismiss Scammon, Valliere, Cross, and Brooks. *See* Docket Nos. 29-30. The McGarry Defendants are Amy McGarry, an attorney who represented the plaintiff, and
*(continued on next page)*

1

deadline pending the issuance of my ruling on the instant motion. *See* Report of Hearing and Order re: Status (Docket No. 28). For the reasons that follow, I now deny the motion to amend and reset the dispositive motions filing deadline to November 10, 2010.

## I. Applicable Legal Standards

The First Circuit has explained:

> A motion to amend a complaint will be treated differently depending on its timing and the context in which it is filed. A plaintiff is permitted to amend a complaint once as a matter of right prior to the filing of a responsive pleading by the defendant. Thereafter, the permission of the court or the consent of the opposing party is required. The default rule mandates that leave to amend is to be freely given when justice so requires, unless the amendment would be futile, or reward, *inter alia,* undue or intended delay.
>
> As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting. Scheduling orders, for example, typically establish a cut-off date for amendments[.] Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent. Where the motion to amend is filed after the opposing party has timely moved for summary judgment, a plaintiff is required to show "substantial and convincing evidence" to justify a belated attempt to amend a complaint.

*Steir v. Girl Scouts of the USA*, 383 F.3d 7, 11-12 (1st Cir. 2004) (citations, footnotes, and internal quotation marks omitted).

"The appropriateness *vel non* of a district court decision denying a motion to amend on the ground of futility depends, in the first instance, on the posture of the case." *Hatch v. Department for Children, Youth & Their Families*, 274 F.3d 12, 19 (1st Cir. 2001). The First Circuit has clarified:

> If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the "futility" label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6). In

---

McGarry & Holmes, LLC, of which McGarry allegedly was an agent or employee. *See* Complaint ¶¶ 12-13, 22-24, 56.

this situation, amendment is not deemed futile as long as the proposed amended complaint sets forth a general scenario which, if proven, would entitle the plaintiff to relief against the defendant on some cognizable theory. If, however, leave to amend is not sought until after discovery has closed and a summary judgment motion has been docketed, the proposed amendment must be not only theoretically viable but also solidly grounded in the record. In that type of situation, an amendment is properly classified as futile unless the allegations of the proposed amended complaint are supported by substantial evidence.

*Id.* (citations omitted).[2]

The plaintiff sought leave to amend her complaint on August 11, 2010, *see* Motion, one day after discovery had closed but prior to the filing of any motions for summary judgment, *see* Docket No. 16. *Steir* and *Hatch* suggest that, in those circumstances, even if motions for summary judgment have not yet been filed, it is appropriate to require a solid grounding in the record, which of course by then is complete, to avert a finding of futility. The parties evidently agree: all of them rely on citations to the record, as well as to the allegations of the proposed amended complaint, in addressing the question of futility. *See* York County Response at 5-9; McGarry Response at 1-3; Plaintiff's Reply to Defendants' Responses to Motion To Extend Deadline and for Leave To Amend Complaint ("Reply") (Docket No. 25) at 4-7.

## II. Factual Background

On December 11, 2007, the plaintiff was arrested by the Wells Police Department and charged with Criminal Threatening and Terrorizing. *See* [Proposed] Amended Complaint (Docket No. 21-1), Exh. A to Motion, ¶ 10. She was transported to the Wells Police Department for booking and incarcerated overnight in the York County Jail. *See id.*

---

[2] With respect to the Rule 12(b)(6) standard, the Supreme Court has elaborated: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (citation and internal quotation marks omitted). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation and internal quotation omitted). Thus, faced with a motion to dismiss, a court must examine the factual content of the complaint and determine whether it can reasonably infer "that the defendant is liable for the misconduct alleged." *Id.*

On December 12, 2007, the plaintiff appeared before the York District Court for her arraignment hearing *via* video teleconference from the York County Jail. *See id*. ¶ 11. She pled not guilty to both charges. *See id*. At the conclusion of the hearing, Judge Wayne Douglas said that he would follow the state's bail recommendation, including that the plaintiff be released on personal recognizance with a Maine Pretrial contract; provided, however, that if she were not accepted into the Maine Pretrial program, she could petition the court for further review of her bail. *See id*. ¶ 12.[3] Jim W. Bond, an employee of the York County Sheriff's Office and York County, was present for the arraignment hearing. *See id*. ¶¶ 5, 14.

Following the hearing, Judge Douglas issued an official written bail order for the plaintiff. *See id*. ¶ 13. The order, as kept by the Maine District Court in York, Maine, released the plaintiff on personal recognizance and contained no requirement that her release be supervised by Maine Pretrial Services or anyone else. *See id*.; *see also* Exh. B (Docket No. 21-2) to Motion.

On December 12, 2007, the Maine District Court in York faxed to the York County Jail in Alfred a copy of the personal recognizance bail for the plaintiff. *See* Proposed Amended Complaint ¶ 14. Bond believed that the order was inconsistent with what Judge Douglas had said and, as a result, he placed a check mark in the box requiring supervised release. *See id*.; *see also* Deposition of Jim W. Bond ("Bond Dep.") (Docket No. 22-2), attached to York County Response, at 16-19; Exhs. C-D (Docket Nos. 21-3, 21-4) to Motion.

---

[3] An audiotape of the plaintiff's video arraignment was played during her deposition and, thus, a transcript of that audiotape appears within her deposition transcript. *See* Transcript of Deposition of Mary P. O'Connor[-]Saverse ("O'Connor-Saverse Dep.") (Docket No. 22-1), attached to York County Response, at 80-84. During the arraignment, the Assistant District Attorney stated: "We're asking for personal recognizance with a Maine Pretrial contract; no alcohol, drugs, weapons; search and testing; no contact with the alleged victim; we're asking that she undergo a mental-health evaluation and counseling, proof on request; not be within 500 feet of the alleged victim; to take any prescribed medications." *Id*. at 82. Judge Douglas stated: "I'm going to go with the State's recommendation including Maine Pretrial and have her screened. If that doesn't work out, she can request a change in the bail." *Id*. at 83-84.

The York County Sheriff's Office and the York County Jail did not release the plaintiff on December 12, 2007. *See* Proposed Amended Complaint ¶ 15. Rather than releasing her, the York County Sheriff's Office and its employees returned her to incarceration in the York County Jail. *See id.*

Despite the York County defendants having received the actual court order from the Maine District Court, Bond modified or altered that order and failed to release the plaintiff despite her repeated demands to be released and inquiries from her friends regarding her release. *See id.* ¶ 19.

On December 13, 2007, attorney Amy McGarry was appointed by the court to act as attorney for the plaintiff. *See id.* ¶ 20. During the period of her incarceration, the plaintiff made multiple attempts to contact McGarry *via* telephone and correspondence. *See id.* ¶ 21. She asked that McGarry visit the jail or otherwise arrange for her release. *See id.* Despite the language of the court's December 12, 2007, order, which indicated that the plaintiff was supposed to have been released on that day, and despite the plaintiff's attempts, McGarry failed to notify the York County Jail or the court that the plaintiff was being wrongfully incarcerated. *See id.* ¶ 22.

The plaintiff subsequently requested that the court appoint another attorney to represent her. *See id.* ¶ 23. On March 21, 2008, the plaintiff's request was granted by the court, and a new attorney was appointed to represent her. *See id.* The new attorney notified the York County Jail that the court had ordered the plaintiff to be released on December 12, 2007. *See id.* The plaintiff was immediately released. *See id.* Prior to being released on March 25, 2008, the plaintiff remained incarcerated in the York County Jail for a period of 103 days. *See id.* ¶ 24.

The plaintiff, who was present for her arraignment, understood that before she could be released, she needed to arrange a contract with Maine Pretrial Services. *See* O'Connor-Saverse Dep. at 85. She also understood that Maine Pretrial Services "can choose to work with you or choose not to work with you." *Id*. at 88. Although she met with Maine Pretrial Services representatives on several occasions during her incarceration, *see id*. at 177, she admits that no court-approved Maine Pretrial Contract was received by the York County Defendants specifically for her between December 12, 2007, and March 25, 2008, *see* Plaintiff's Response to Defendant York County's Request for Admissions ("Plaintiff's Admissions") (Docket No. 22-5), attached to York County Response, ¶ 13; *see also* O'Connor-Saverse Dep. at 158. She further admits that the York County Defendants were not obligated to complete, or advocate for the approval of, a Maine Pretrial Services contract *for* her. *See* Plaintiff's Admissions ¶¶ 14-15.

John J. Wall, III, attorney for the York County Defendants, notified plaintiff's counsel Joshua Hadiaris by email dated July 13, 2010, that it had been discovered that Bond had modified the order faxed from the York District Court clerk's office by checking the box marked supervised release. *See* Affidavit of John J. Wall, III (Docket No. 22-3), attached to York County Response, ¶¶ 3-4 & Exh. 1 thereto (Docket No. 22-4). Bond was deposed on July 19, 2010, and the transcript of his deposition was forwarded to the plaintiff's counsel on August 4, 2010. *See* Exh. 2 (Docket No. 25-2) to Reply. The instant motion was filed one week later. *See* Motion.

### III. Discussion

The plaintiff seeks to amend her complaint to (i) add a defendant, Bond, (ii) drop the "John Doe" defendants, and (iii) ground her claims against the York County Defendants not only on their failure to release her on December 12, 2007, in accordance with the court's written order

but also on Bond's alteration of the jail's copy of that order by checking a box indicating that supervised release was required. *Compare* Complaint ¶¶ 14-27, 30-49 *with* Proposed Amended Complaint ¶¶ 10-24, 27-45. She proposes to make no substantive alteration in her causes of action, continuing to allege that, between December 12, 2007, and March 25, 2008, she was detained in the York County Jail without lawful purpose or authority. *Compare* Complaint ¶¶ 27, 30 *with* Proposed Amended Complaint ¶¶ 24, 27.[4] Even assuming *arguendo* that the plaintiff timely sought leave to amend her complaint, I agree with the defendants that her proposed amendment is futile.

The plaintiff acknowledges that Judge Douglas stated at the conclusion of her arraignment that he would follow the state's bail recommendation, including the provision that she be released on personal recognizance with a Maine Pretrial Services contract; provided, however, that if she were not accepted into the Maine Pretrial Services program, she could petition the court for further review of her bail. *See* Proposed Amended Complaint ¶ 12. She admits that she understood that the obtaining of a Maine Pretrial Services contract was a condition of her release. *See* O'Connor-Saverse Dep. at 85. She admits that no Maine Pretrial Services contract was completed for her prior to her release on March 25, 2008, and that the York County Defendants were not obligated to complete, or advocate for approval of, such a

---

[4] The plaintiff's causes of action consist of (i) a claim against the York County Defendants pursuant to 42 U.S.C. § 1983 for deprivation of her rights to liberty and due process of law, in contravention of the Fifth and Fourteenth amendments, and her right to be free from unreasonable seizure, in contravention of the Fourth Amendment (Count I), (ii) a claim against York County, Ouellette, and Vitiello (and, in the Proposed Amended Complaint, Bond) pursuant to 42 U.S.C. § 1983 for promulgating policies, customs, and usages that reflected deliberate indifference to the plaintiff's unlawful detention and resulted in violation of her constitutional rights (Count II), (iii) a claim against the York County Defendants for violation of the Maine Civil Rights Act, 5 M.R.S.A. § 4681, as a result of her alleged unlawful incarceration for 103 days (Count III), (iv) a claim against the individual York County Defendants pursuant to 42 U.S.C. § 1983 for punitive damages (Count IV), (v) a claim against McGarry for negligence (Count V), and (vi) a claim against McGarry & Holmes, LLC, for negligence/*respondeat superior* (Count VI). *Compare* Complaint ¶¶ 29-56 *with* Proposed Amended Complaint ¶¶ 26-52.

contract. *See* Plaintiff's Admissions ¶¶ 13-15. There is no indication that she sought further review of her bail.

The plaintiff asserts that, if a clerical error were made in the court's written order, which she does not concede, the court alone had the power to correct any such error, and could do so only in accordance with the procedures of Maine Rule of Criminal Procedure 50. *See* Reply at 5-6. That rule provides, in its entirety:

> Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter, while the appeal is pending may be so corrected with leave of the appellate court.

Me. R. Crim. P. 50. The plaintiff contends that, absent such correction, the order faxed to the jail, which omitted any condition of release other than personal recognizance, was controlling. *See* Reply at 6. She suggests that the jail apparently realized this because, once the official copy of the order was faxed to the jail, she was released despite the existence of a clear question as to whether she had complied with any purported requirement to obtain a Maine Pretrial Services contract. *See id.*[5]

The defendants take the position that Judge Douglas's oral order, rather than the written order omitting its supervised release component, at all times controlled, rendering the plaintiff's detention both authorized and lawful. *See* York County Response at 9 (arguing that, by plaintiff's own admissions, "there was unquestionably 'lawful purpose and authority' supporting

---

[5] I do not understand the plaintiff to be asserting that, as a result of this release, the York County Defendants waived, or are estopped from pressing, any argument that her incarceration was lawful and authorized. To the extent that she means to make such an argument, I do not address it for two reasons: it was raised for the first time in a reply memorandum, and it is perfunctorily made. *See, e.g., In re One Bancorp Sec. Litig.*, 134 F.R.D. 4, 10 n.5 (D. Me. 1991) (court generally will not address an argument advanced for the first time in a reply memorandum); *Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).

her incarceration at the Jail" and that "Officer Bond did not prolong her stay at the Jail because the requirement imposed by Judge Douglas for release – completion of a Maine Pretrial contract – was never attained"); McGarry Response at 3 (arguing that "plaintiff is now trying to argue that those involved, including the newly proposed Defendant Bond, should have knowingly handled plaintiff's case as if they [were] unaware of the District Court's actual oral order, which was controlling").

My research indicates that the defendants have the better argument. In Maine, as elsewhere, "[w]here a discrepancy exists between the oral pronouncement of sentence and the written judgment and commitment, it has long been the law that the oral pronouncement of sentence controls, and we may examine the record as a whole to determine the actual decision made by the sentencing court notwithstanding any inaccuracy reflected in the written judgment." *State v. Hutchinson*, 593 A.2d 666, 667 (Me. 1991); *see also, e.g., United States v. Flemmi*, 402 F.3d 79, 96 n.26 (1st Cir. 2005) ("[W]here the conditions of supervised release announced at the sentencing hearing conflict in a material way with the conditions of supervised release in the written sentencing order, the oral conditions control.") (citation and internal quotation marks omitted); *Boan v. State*, 695 S.E.2d 850, 852 (S.C. 2010) ("Although this Court has not previously spoken on the issue of whether an oral pronouncement of a sentence controls over a conflicting written sentencing order, the majority of jurisdictions that have considered this point hold the oral pronouncement controls."). This rule has been applied in the context of the setting of conditions of release or probation as part of sentencing, *see, e.g., Hutchinson*, 593 A.2d at

667, and I perceive no reason why it should not be applied in the context of the setting of conditions of pretrial release.[6]

In these circumstances, the uncorrected clerical error contained in the court's order of December 12, 2007, did not entitle the plaintiff to release, or otherwise undermine the lawfulness of her incarceration pursuant to Judge Douglas's unambiguous oral order. *See Dykes v. State*, 733 So.2d 919, 920 (Ala. Crim. App. 1998) ("A clerical error in the commitment or penitentiary records does not invalidate [an inmate's] sentence or entitle [him or her] to a release.") (citation and internal quotation marks omitted); *State v. Brydon*, 454 A.2d 1385, 1388 (Me. 1983) ("Recourse to the records of the court as a whole may be had to determine the actual action in fact taken by the court, notwithstanding any inaccuracy by commission or omission carried by the written judgment. Where the record is clear, the correction may be made at the Law Court level.") (citations omitted). Bond's choice to alter the jail's copy of the court's written order to conform with Judge Douglas's oral order, rather than to seek its correction pursuant to Maine Rule of Criminal Procedure 50, while unorthodox, did not render the plaintiff's incarceration unlawful or unauthorized. Her proposed amendment accordingly is futile.

### IV. Conclusion

For the foregoing reasons, the Motion To Amend is **DENIED**. The Clerk's Office is **DIRECTED** to reset the deadline for the filing of dispositive motions to November 10, 2010.

*SO ORDERED.*

*NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

---

[6] While Maine Rule of Criminal Procedure 50 provides a mechanism for the court to correct clerical errors in its written orders, it does not purport to address the question of whether, absent such correction, the written order controls even if at odds with a clear pronouncement from the bench.

10

***Failure to file a timely objection shall constitute a waiver of the right to review by the district court and to appeal the district court's order.***

Dated this 20th day of October, 2010.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge
